**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**Case No. 6:14-cv-950-Orl-41-CEM-KRS**

REX D. HILL,

       Plaintiff,

v.                                        DISPOSITIVE MOTION

ALLIANZ LIFE INSURANCE
COMPANY OF NORTH AMERICA,

       Defendant.

---

**DEFENDANT ALLIANZ LIFE INSURANCE COMPANY OF**
**NORTH AMERICA'S MOTION FOR SUMMARY JUDGMENT AND**
**SUPPORTING MEMORANDUM OF LAW**

---

Irma Reboso Solares (Fla. Bar No. 797073)
isolares@cfjblaw.com
Stephanie A. Fichera (Fla. Bar No. 55813)
sfichera@cfjblaw.com
Scott E. Byers (Fla. Bar No. 68372)
sbyers@cfjblaw.com
CARLTON FIELDS JORDEN BURT, P.A.
Miami Tower, Suite 4200
100 S.E. Second Street
Miami, Florida  33131-2113
Telephone:  (305) 530-0050
Facsimile:   (305) 530-0055

# **TABLE OF CONTENTS**

*Page*

INTRODUCTION ................................................................................................ 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................. 2

LEGAL STANDARD .......................................................................................... 9

ARGUMENT ...................................................................................................... 9

    I.     PLAINTIFF'S DEFAMATION CLAIM IS TIME BARRED .............................. 9

    II.    ALLIANZ IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DEFAMATION CLAIM.............................................. 10

          A.    Plaintiff Cannot Satisfy The Publication Element Of His Defamation Claim. ................................................................... 10

          B.    The Allegedly Defamatory Statements Are True. .................................... 13

          C.    The Allegedly Defamatory Statements Are Privileged. ........................... 15

          D.    Plaintiff's Claim For Defamation As To Any Statements Made To A Debt Collector Or To Credit Reporting Agencies Fails As A Matter Of Law ........................................................................... 18

    III.    THE SINGLE-ACTION RULE BARS PLAINTIFF'S REMAINING CLAIM ............................................................................................. 19

    IV.    ALLIANZ IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM.................................... 20

          A.    Allianz Had No Knowledge Of Plaintiff's Plan. ..................................... 21

          B.    Plaintiff Cannot Establish Intentional Interference By Allianz. ............... 21

          C.    Any Alleged Interference By Allianz Was Justified And Privileged. ...................................................................................... 23

    V.    PLAINTIFF'S DAMAGES CLAIMS ARE BARRED BY THE DOCTRINE OF AVOIDABLE CONSEQUENCES ........................................... 25

CONCLUSION .................................................................................................. 25

CERTIFICATE OF SERVICE .............................................................................. 27

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allen v. Tyson Foods, Inc.*,
   121 F.3d 642 (11th Cir. 1997) ................................................... 9

*Barco Holdings, LLC v. Terminal Investment Corp.*,
   967 So. 2d 281 (Fla. 3d DCA 2007) .................................... 23, 24

*Black v. Adv. Neuromodulation Sys., Inc.*,
   2014 WL 1303656 (N.D. Fla. Mar. 27, 2014) ................. 16, 17, 23

*Boehm v. American Bankers Insurance Group, Inc.*,
   557 So. 2d 91 (Fla. 3d DCA 1990) .................................. 16, 22, 23

*Bortell v. White Mountains Insurance Group, Ltd.*,
   2 So. 3d 1041 (Fla. 4th DCA 2009) ........................................ 23

*Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*,
   831 So. 2d 204 (Fla. 4th DCA 2002) ...................................... 20

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................... 9

*Chinnici v. WBI, Inc.*,
   2015 WL 1525785 (M.D. Fla. Apr. 2, 2015) ............................ 10

*Ernie Haire Ford v. Ford Motor Co.*,
   260 F.3d 1285 (11th Cir. 2004) ............................................. 24

*Ethan Allen, Inc. v. Georgetown Manor, Inc.*,
   647 So. 2d 812 (Fla. 1994) ................................................... 21

*Ethyl Corp. v. Balter*,
   386 So. 2d 1220 (Fla. 3d DCA 1980) ............................... 22, 24

*Fridovich v. Fridovich*,
   598 So. 2d 65 (Fla. 1992) ..................................................... 19

*Fun Spree Vacations, Inc. v. Orion Insurance Co.*,
   659 So. 2d 419 (Fla. 3d DCA 1995) ...................................... 19

*Genet Co. v. Annheuser-Busch, Inc.*,
   498 So. 2d 683 (Fla. 3d DCA. 1986) ...................................... 23

*Gonsalves v. Sammons Financial Group, Inc.*
  2007 WL 2840397 (Cal. Ct. App. Oct. 2, 2007)........................................................ 14

*Graphic Assocsiates, Inc. v. Riviana Restaurant Corp.*,
  461 So. 2d 1011 (Fla. 4th DCA 1984) ................................................................... 25

*Gunder's Auto Center v. State Farm Mutual Automobile Insurance Co.*,
  422 F. App'x 819 (11th Cir. 2011) ......................................................................... 17

*Hodge v. Orlando Utilities Commission*,
  2011 WL 250400 (M.D. Fla. Jan. 26, 2011)............................................... 18, 21, 23

*In re Creative Loafing, Inc.*,
  2010 WL 1408425 (M.D. Fla. Apr. 5, 2010) ............................................................. 9

*Jews For Jesus, Inc. v. Rapp*,
  997 So. 2d 1098 (Fla. 2008) ...................................................................... 10, 13, 19

*Kamau v. Slate*,
  2012 WL 5390001 (N.D. Fla. Oct. 1, 2012) ........................................................... 20

*Lefrock v. Walgreens Co.*,
  2015 WL 226034 (M.D. Fla. Jan. 16, 2015)............................................................ 18

*Lofton-Taylor v. Verizon Wireless*,
  262 F. App'x 999 (11th Cir. 2008) ......................................................................... 18

*Lopez v. Ingram Micro, Inc.*,
  1997 WL 401585 (S.D. Fla. Mar. 18, 1997)............................................................ 13

*Mattocks v. Black Entertainment Television LLC*,
  2014 WL 4101594 (S.D. Fla. Aug. 20, 2014 ........................................................... 23

*Maxi-Taxi of Florida, Inc. v. Lee County Port Authority*,
  301 F. App'x 881 (11th Cir. 2008) .................................................................. 22, 23

*Networkip, LLC v. Spread Enterprises, Inc.*,
  922 So. 2d 355 (Fla. 3d DCA 2006) ................................................................ 21, 23

*Nunez v. City of San Diego*,
  114 F.3d 935 (9th Cir. 1997) ................................................................................. 14

*Ovadia v. Bloom*,
  756 So. 2d 137 (Fla. 3d DCA 2000) ....................................................................... 20

*Pelc v. Nowak*,
  2012 WL 2368889 (M.D. Fla. June 22, 2012).......................................................... 20

*Rare 1 Corp. v. Moshe Zwiebel Diamond Corp.*,
   822 N.Y.S.2d 375 (N.Y. Sup. Ct. 2006) ............................................................... 10

*Rosenberg v. American Bowling Congress*,
   589 F. Supp. 547 (M.D. Fla. 1984) .......................................................... 13, 15, 18

*Rush-Hampton Industries, Inc. v. Home Ventilating Institute*,
   419 F. Supp. 19 (M.D. Fla. 1976) ...................................................................... 17

*System Components Corp. v. Florida Department of Transportation*,
   14 So. 3d 967 (Fla. 2009) ................................................................................ 25

*Tardif v. PETA*,
   829 F. Supp. 2d 1219 (M.D. Fla. 2011) .................................................... 21, 22, 23

*Valencia v. Citibank International*,
   728 So. 2d 330 (Fla. 3d DCA 1999) .................................................................. 11

*Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan*,
   629 So. 2d 113 (Fla. 1993) ................................................................................ 9

**Statutes**

Fla. Stat. § 95.11(4)(g) ........................................................................................... 9

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................... 9

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, Defendant Allianz Life Insurance Company of North America ("Allianz") respectfully submits this dispositive Motion for Summary Judgment and Supporting Memorandum of Law.

## INTRODUCTION

The theory of Plaintiff's Complaint (DE 2) is that Allianz defamed Plaintiff and tortiously interfered with his plan to establish a life insurance sales organization in Puerto Rico through another insurer when Allianz posted Plaintiff's outstanding debt on a website accessible only to insurance-company subscribers. The debt arose from Allianz's assessment of a $1,000 commission "chargeback" to Plaintiff, a former Allianz insurance agent and Field Marketing Organization ("FMO") principal. Although Plaintiff admits that chargebacks are common in the industry (Compl. ¶¶ 10-11), he refused to pay the chargeback in dispute here. Plaintiff's refusal to pay the chargeback ultimately resulted in his name being posted on Vector One's Debit-Check.com, which provides information to subscribers regarding agents with outstanding debts.

The undisputed record evidence demonstrates that Plaintiff's claims against Allianz are entirely without merit and that Allianz is entitled to final summary judgment as a matter of law. First, Plaintiff's defamation claim is barred by the two-year statute of limitations because the post was published on Vector One in 2009, more than three years before Plaintiff filed this action. Second, neither Plaintiff's self-publication to his subagents nor his invited publication to another insurance carrier of the Vector One post support a defamation claim under Florida law, negating an essential element of the claim. Third, the fact that the $1,000 debt actually existed is indisputably true. Plaintiff might not like the fact that his contract with Allianz granted Allianz sole discretion to refund premium to a customer and unambiguously required him to repay the commission chargeback, but no false statement of fact occurred when Allianz posted on Vector One that Plaintiff owed a debt to Allianz, negating another essential element of his defamation

claim.

Plaintiff's tortious interference claim likewise fails.  Even if Plaintiff could establish the elements of tortious interference—which he cannot—the claim fails as a matter of law because it is premised on the publication that gave rise to his defamation claim.  Because the defamation claim is non-actionable, Plaintiff's tortious interference claim is barred under Florida's single-action rule, which prevents Plaintiff from bringing multiple causes of action in tort based on the same publication.  Further, Plaintiff cannot demonstrate the key elements of his tortious interference claim.  Plaintiff has conceded that Allianz had no knowledge of his plan to sell insurance in Puerto Rico through another carrier.  Moreover, there is no evidence that Allianz manifested a specific intent to interfere with Plaintiff's business plan or did anything other than take steps to collect a valid debt, which is justifiable and privileged as a matter of law.  These undisputed facts entitle Allianz to summary judgment on the tortious interference claim.

Finally, even if Plaintiff could prevail on the elements of his defamation and tortious interference claims, he otherwise cannot establish that he is entitled to recover damages in this case.  Rather than paying—even under protest—the $1,000 chargeback debt in accordance with the terms of his contract and avoiding altogether the possibility of negative consequences from the outstanding debt, Plaintiff brought this lawsuit over three years later.  Because Plaintiff could have reasonably avoided the alleged financial consequences about which he complains through minimal effort, Plaintiff's claims are barred by the doctrine of avoidable consequences.

For these and the other reasons set forth below, summary judgment should be entered in favor of Allianz on all counts of the Complaint.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

In 1991, Rex D. Hill was appointed as an agent by LifeUSA Insurance Company, a predecessor company that later merged into Allianz.  DE 76-1.  Hill's appointment authorized

him to sell life insurance and annuities and to operate a FMO on LifeUSA's behalf.  *See id.*[1]  An FMO is an independent organization that has contracted with an insurance company to market and sell the company's products through a hierarchy of licensed and appointed agents.  *See* Rice Dep. at 64:10-18 (DE 64-2, p. 5); Deposition of Rex Hill ("Hill Dep.") at 30:4-16 (DE 64-8, p. 31).  As an FMO principal, Hill received a portion of the commissions earned by his subagents for the sale of LifeUSA's products, known as an "override."  *See id.*

### The Non-Party's Annuity

Effective March 25, 2004, Allianz issued an annuity to a non-party to this case (the "Non-Party").  *See* Rice Dep. at Exh. 2 (DE 64-3, pp. 14-41).  The Non-Party, a resident of New Hampshire, purchased the annuity from John Dunn ("Dunn"), an agent within Hill's FMO hierarchy.  Hill Dep. at 143:4-8 (DE 64-10, p. 24).  As a result of the sale, Dunn received a commission from Allianz, Rice Dep. at 64:3-9 (DE 64-2, p. 5), and Plaintiff, as Dunn's FMO principal, received an override in the amount of $1,000.00.  Declaration of Stephanie A. Fichera (DE 76-3) ("Fichera Decl."); at Exh. 1; Hill Dep. at 144:12-24 (DE 64-10, p. 25).

In 2004, after an annuity was sold and issued, Allianz's practice was to provide the selling agent with a copy of the issued contract and a blank policy delivery receipt.  *See* Rice Dep. at 102:25–103:11 (DE 64-2, pp. 43-44).  The selling agent is required to comply with applicable state insurance laws and regulations in delivering the contract.  *See* DE 76-1, ¶ 4.b. When signed policy delivery receipts are required by state law, contract, or otherwise, agents are obligated to obtain the signed receipt for the contract owner's policy file.  Declaration of Cynthia A. Rice (DE 76-2) ("Rice Decl.") ¶ 3.  The policy delivery receipt is intended to document actual delivery and date of delivery of the contract to the owner.  *Id.*

---

[1] Following LifeUSA's merger into Allianz, Allianz became the successor to Hill's Agent Agreement.  Deposition of Cynthia A. Rice ("Rice Dep.") at 47:7-13 (DE 64-1, p. 49).  Docket entries are cited herein by the page numbers assigned by CM/ECF.

**The Non-Party's Complaint**

On or about September 12, 2006, the Non-Party wrote to Allianz to complain that, among other things, Dunn failed to provide her with a copy of her annuity contract.  Rice Dep. at Exh. 7 (DE 64-4, pp. 17-18).  The Non-Party requested that Allianz return her initial investment in the annuity, plus interest, and notified Allianz that she would file a complaint with a state insurance department and pursue legal action if the parties were not able to settle her complaint.  *Id.*

In accordance with Allianz's standard procedures for handling consumer complaints, Allianz shared the complaint with Dunn, the agent who sold the annuity to the Non-Party and whose sales practices were the subject of her complaint, and asked Dunn to provide a written response.  Fichera Decl. at Exh. 2; Rice Dep. at Exh. 9 (DE 64-4, pp. 21-58).  The Company advised Dunn:  "*Do not contact the insured in an effort to resolve this complaint.  Resolution of this complaint must be handled solely through this office.*"  Fichera Decl. at Exh. 2.  Following a review of the complaint, Dunn's statement, and the Company's policy files, Allianz advised the Non-Party that it found no indication that unethical sales practices were used in the sale of her annuity and declined to return her premium as requested.  Rice Dep. at Exh. 10 (DE 64-5, p. 3).

On or about April 23, 2008, Allianz received notice from the New Hampshire Insurance Department ("NHID") that it was investigating Dunn concerning the sale of the annuity to the Non-Party.  Fichera Decl. at Exh. 3.  In response to a request from the NHID as to whether there was any evidence that the annuity was delivered to the Non-Party, Allianz advised the NHID that it did not have a signed policy delivery receipt for the annuity.  Hill Dep. at Pl.'s Exh. 36 (DE 64-13, p. 38).  Allianz subsequently received from the NHID an Order to Show Cause and Notice of Hearing dated February 23, 2009 ("Order to Show Cause"), which escalated the investigation.  Rice Dep. at Exh. 13 (DE 64-5, pp. 10-12).  The Order to Show Cause alleged that the Non-Party "states she never received the policy" and that Allianz violated a New Hampshire

insurance regulation by failing to obtain her signature on a policy delivery receipt form. *Id.* ¶¶ 4,

7. The Order to Show Cause referenced N.H. Code Admin. R. Ins. 401.04(h):

> Unless the insurer has adopted a procedure to obtain a policyholder's dated and
> signed receipt for delivery of the policy pursuant to (f) above, it shall be
> **presumed** that the date of delivery is the date shown in the policyholder's records
> or by his memory unless there is evidence sufficient to void this presumption.

*Id.* ¶ 6 (emphasis added). The Order to Show Cause further stated:

> [B]ecause [the Non-Party] states neither the Allianz Life nor its agent, Mr. Dunn,
> ever delivered the policy to her, the Hearing Officer must presume that Allianz
> Life never delivered the indexed annuity policy to [the Non-Party]. (See Ins. 40
> 1.04(h).) The presumption under Ins. 404.04(h) is rebuttable, but it does not
> appear that Allianz Life, who carries the burden of proof once the presumption is
> established, can meet its burden.

*Id.* ¶ 8. The NHID scheduled a hearing for May 5, 2009 "for purposes of giving Allianz Life the

opportunity to show cause why it should not have its license revoked or suspended, and/or

receive an administrative fine for violating Ins. 401.04(h)." *Id.* at p. 1.

The foundation of the NHID's charge against Allianz was that the alleged failure of its

agent to deliver the contract to the Non-Party denied her the opportunity to "free look" the

contract. Rice Dep. at Exh. 15 ¶ 1 (DE 64-5, p. 16). Pursuant to state insurance laws and

regulations, insurers are required to include a "free look" provision prominently in annuity

contracts. *See, e.g.*, Declaration of William D. Hager [DE 76-4] ("Hager Decl.") ¶ 12; Fla. Stat.

§ 626.99(4)(i). Free look provisions afford contract owners 10 to 30 days after delivery of a new

contract to review the contract and decide whether to keep it or to cancel it for a full refund of

premium. *See id.* The Non-Party's contract contained a 20-day free look provision on its first

page. Rice Dep. at Exh. 2 (DE 64-3).

Facing the risk of a fine or revocation or suspension of its license, on or about June 1,

2009, Allianz entered into a negotiated settlement with the NHID in lieu of further legal

proceedings. Rice Dep. at Exh. 15 (DE 64-5, pp. 16-18). Allianz agreed to provide the Non-

Party with a copy of her annuity and the 20-day free look period provided by the contract, during which time she could review the contract and decide if she wished to keep or cancel it. *Id.* ¶ C. If the Non-Party chose to exercise the free look provision, Allianz agreed to refund to the Non-Party her initial premium less any amounts she had taken from the premium as penalty-free withdrawals. *Id.* On June 29, 2009, the Non-Party announced that she wished to rescind her annuity and receive the refund. Fichera Decl. at Exh. 4; Rice Dep. at Exh. 14 (DE 64-5, p. 13).

### Chargeback Of Commissions To Rex D. Hill

When an insurance company refunds premium to a policyholder, the agent and FMO who received a commission and override, respectively, for the sale of the policy are contractually obligated to repay the commission and override to the company. *See* Rice Dep. at Exh. 25 (DE 64-5, pp. 43-44); Compl. ¶ 10; Hager Decl. ¶ 5. This is known in the insurance industry as a "chargeback." *See id.* Following refund of the Non-Party's premium, Allianz charged back the commissions earned on the annuity's sale to Dunn. Compl. at Exh. 2. Because he was the FMO at the time of, and was paid a $1,000 override for, the annuity's sale, Allianz charged back the override to Plaintiff as well. Rice Dep. at 81:15-18 (DE 64-2, p. 22).

On July 12, 2009, Allianz sent Plaintiff a Commission Statement Summary advising him of the chargeback. Fichera Decl. at Exh. 5. It informed Plaintiff that the chargeback resulted from the cancellation of the annuity owned by the Non-Party and sold by Dunn. *Id.* On August 10, 2009, Allianz advised Plaintiff by letter that he had "a debt in the amount of $1,000.00 in [his] commission account" and requested payment of the debt in accordance with Plaintiff's contract. Hill Dep. at Pl.'s Exh. 30 (DE 64-13, p. 26). On September 4, 2009, an Allianz representative called Plaintiff's office to explain the refund of the Non-Party's annuity and provide Plaintiff with information about the debt. Fichera Decl. at Exh. 6.

On September 10, 2009, Allianz notified Plaintiff that the debt was over 60 days past due.

Hill Dep. at Pl.'s Exh. 31 (DE 64-13, p. 27).   On September 15, 2009, Plaintiff contacted an Allianz representative by telephone.   Fichera Decl. at Exh. 6.   The representative explained the debt balance to Plaintiff during the call, and she also e-mailed to Plaintiff another copy of the Statement showing the debt.   *See id.*   Plaintiff indicated that he would send a letter to the representative disputing the debt.   *See id.*   Following the call, Plaintiff did submit an e-mail on September 15, 2009 disputing the chargeback to Allianz, which contended that Plaintiff did not believe he owed the debt because of Allianz's "decision to return the premiums to this client without consulting" him and because Allianz "did not give [him] a chance to conserve the business."   Fichera Decl. at Exh. 7.

Allianz deemed Plaintiff's e-mail a formal appeal of the chargeback and referred his appeal to the Company's Complaint Oversight Committee.   Rice Decl. ¶ 4.   The Complaint Oversight Committee considered Plaintiff's appeal and determined that the chargeback was appropriate under the circumstances and under the terms of Plaintiff's Agent Agreement.   *Id.* The Complaint Oversight Committee, accordingly, denied Plaintiff's request that the chargeback be waived or otherwise reversed.   *Id.*   Allianz informed Plaintiff of the Committee's decision in an October 2, 2009 letter.   Hill Dep. at Pl.'s Exh. 16 (DE 64-13, p. 28).   The letter advised Plaintiff:   "This is the final decision on this matter."   *Id.*

On November 9, 2009, the chargeback reached 120 days past due and remained unpaid. Fichera Decl. at Exh. 6.   On November 11, 2009, Allianz wrote to Plaintiff, informing him that the chargeback was still outstanding and would "be transferred to a collection agency and reported to the credit bureaus."   Hill Dep. at Pl.'s Exh. 20 (DE 64-13, p. 33).   Plaintiff admits that he never paid the chargeback.   Hill Dep. at 50:16-18 (DE 64-8, p. 51).   It is Allianz's standard practice to post unpaid agent chargebacks to Debit-Check.com after they have been outstanding for more than 120 days.   Rice Decl. ¶ 5.   Debit-Check.com is a web-based service

operated by Vector One, which allows insurance-company subscribers to share information regarding unpaid agent chargebacks.  Deposition of Kristina Nicholls ("Nicholls Dep.") at 6:19-23 (DE 64-6, p. 7).  Approximately 150 insurance carriers subscribe to Vector One.  *Id.* at 9:18-23.  Allianz uses the information available on Debit-Check.com in collecting outstanding agent debts, conducting due diligence regarding prospective agents, and making agent contracting decisions.  Rice Decl. ¶ 6; Nicholls Dep. at Exh. 28 (DE 64-7, pp. 18, 21).

As a result of Plaintiff's failure to pay the chargeback following conclusion of his appeal, Allianz posted his name on Debit-Check.com on November 11, 2009.  Nicholls Dep. at Exh. 27 (DE 64-7, p. 13).[2]  Allianz's post contained Plaintiff's name and Social Security number as well as contact information for an Allianz employee.  *Id.* at 15:14–16:1 (DE 64-6, pp. 16-17) & Exh. 26 (DE 64-7, p. 10).  The post did not contain the amount, nature, or circumstances of Plaintiff's debt or any additional information regarding Plaintiff or his relationship with Allianz.  *See id.*

### National Western Life Insurance Company

On or about October 14, 2012, Plaintiff submitted an agent application to National Western Life Insurance Company ("National Western").  DE 76-5.  In connection with that application, Plaintiff advised National Western that he had an outstanding debt with Allianz, which was posted on Vector One, and he authorized National Western to obtain information from third parties about his "character, credit, business, reputation, criminal records, [and] employment history."  *Id.* at 3, 4.  On October 17, 2012, Allianz received an e-mail from National Western requesting information regarding Allianz's post on Vector One for Plaintiff.  Fichera Decl. at Exh. 8.  Allianz responded to the request as follows:

---

[2] Following conclusion of the appeal, Allianz considered Plaintiff's dispute of the chargeback closed.  Rice Decl. ¶ 4.  Plaintiff's subsequent communications to Allianz regarding the chargeback raised no new arguments in support of its waiver or reversal that were not considered in the course of the appeal.  *Compare* Fichera Decl. at Exh. 7 *with* Compl. at Exh. 4-7 & 9-10.

Debt Amount:   $1400.00
Term Date:    11/11/2009
Attempts to Pay:   No
Are you in negotiation to settle this amount?:   No
Is the amount owed a true charge-back?   Yes

*Id.* at Exh. 9.[3]  Allianz provided no additional information to, and had no other communications with, National Western regarding Plaintiff or the chargeback.  Rice Decl. ¶ 7.

## LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  An issue of fact is "'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.*  Here, the undisputed evidence shows that Allianz is entitled to judgment on Plaintiff's claims as a matter of law.

## ARGUMENT

I.   **PLAINTIFF'S DEFAMATION CLAIM IS TIME BARRED**

Under Florida law, actions for defamation are governed by a two-year statute of limitations.  Fla. Stat. § 95.11(4)(g).  The period begins to run on the date of publication. *Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan*, 629 So. 2d 113, 114-15 (Fla. 1993); *In re Creative Loafing, Inc.*, 2010 WL 1408425, at *2 (M.D. Fla. Apr. 5, 2010).  Plaintiff's defamation claim here centers on Allianz's post to Vector One.  Compl. ¶¶ 14, 30; Hill Dep. at 55:5-8 (DE 64-8, p. 56).  It is undisputed that Allianz posted Plaintiff on Vector

---

[3] The $1,400 debt referenced above reflects Plaintiff's initial $1,000 chargeback plus the addition of certain fees charged by a third-party debt collector.  *See* Rice Decl. ¶ 8.

One on November 11, 2009.  Nicholls Dep. at Pl.'s Exh. 27 (DE 64-7, p. 13).[4]  Nonetheless, Plaintiff delayed in bringing his Complaint until February 8, 2013, more than three years after publication of Allianz's allegedly defamatory statement on Vector One and after the limitations period had run.  DE 2.  Plaintiff's defamation claim is, therefore, time-barred.  *See Chinnici v. WBI, Inc.*, 2015 WL 1525785, at *2 (M.D. Fla. Apr. 2, 2015) (defamation claim raised more than two years after alleged false statements were published on a website barred by the statute of limitations); *cf. Rare 1 Corp. v. Moshe Zwiebel Diamond Corp.*, 822 N.Y.S.2d 375, 378 (N.Y. Sup. Ct. 2006) (defamation barred claim because New York's limitation period began to run when comments were first posted on a subscription-only website).

## II.    ALLIANZ IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DEFAMATION CLAIM

Even if Plaintiff's defamation claim was not time barred, Plaintiff cannot put forth evidence to establish key elements of his claim.  Under Florida law, "[d]efamation has the following five elements: (1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory."  *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).  For the reasons below, Allianz is entitled to summary judgment on Plaintiff's defamation claim.

### A.    Plaintiff Cannot Satisfy The Publication Element Of His Defamation Claim.

It appears that Plaintiff is alleging publication as to two different groups:  subagents he attempted to recruit in Puerto Rico and personnel at National Western involved in considering his application for agency appointment.  *See* Compl. ¶¶ 25, 31; Hill Dep. at 51:20–52:11, 55:5–55:16 (DE 64-8, pp. 52-53, 56).  As a matter of law, Plaintiff cannot meet the publication

---

[4] Plaintiff admitted in his Complaint that he was aware in 2009 that he would be posted on Vector One if he failed to pay a chargeback assessed by Allianz.  Compl. ¶ 14.

element of his defamation claim as to either group.

To the extent Plaintiff's defamation claim is premised on any alleged publication by Plaintiff to his Puerto Rico subagents that he "couldn't get" a contract with National Western because he "was reported to Vector One," the publication element is not met. Hill Dep. at 51:20–53:6 (DE 64-8, pp. 52-54) (testimony by Plaintiff that he told his agents about the Vector One post). There is no evidence that Allianz had any communications with or published any information to Plaintiff's subagents regarding the debt, the Vector One post, or Plaintiff's relationship with National Western. Plaintiff's ***own publication*** of this information to his subagents—his self-publication or self-defamation—does not support a defamation claim under Florida law. *Valencia v. Citibank Int'l*, 728 So. 2d 330, 330-31 (Fla. 3d DCA 1999) (declining to create exception to publication requirement for self-defamation).

Plaintiff's claim also fails to the extent it is premised on the publication of the Vector One post to National Western. Hill Dep. at 55:5-16 (DE 64-8, p. 56). "It is axiomatic that 'invited defamation,' or the issuance of a defamatory statement wherein the injured party precipitated the statement's release, is not actionable." *Litman v. Mass. Mut. Life Ins. Co.*, 739 F.2d 1549, 1560 (11th Cir. 1984). "[T]he consent of another to the publication of defamatory matter concerning him is a complete defense to his action for defamation." *Id.* "Florida has approved this general rule but has couched it in terms of a lack of 'publication,' one of the elements necessary to establish a prima facie case of slander." *Id.*

Under the consent/invited defamation rule, Allianz's post to Vector One and provision of information regarding that post to National Western does not constitute a "publication" that would sustain a defamation claim because Plaintiff consented to and invited the release of that information when he submitted his application for an agency contract to National Western. Plaintiff's application to National Western states as follows:

> *I hereby authorize any individual or company to give NWL®, or its authorized representative, any and all information with reference to my character, credit, business reputation, criminal records, employment history including information whether or not among their records (collectively "My Information"), and I release said individual or company from any and all liability whatsoever which results, or might result, from the disclosure of My Information. . . .*

DE 76-5, p. 4; *see* Hill Dep. at 184:8–185:4 (DE 64-11, pp. 5-6) (authenticating application).

 *Litman* is analogous.  Litman was a former general insurance agent of Mass Mutual.  739 F.2d at 1552-53.  Following his termination from Mass Mutual, Litman applied to Travelers Insurance Company.  *Id.* at 1555.  In connection with that application, Litman directed Travelers to contact the Chief Executive Officer of Mass Mutual "as a reference, despite being told by Mass Mutual upon termination that he had '. . . very serious financial problems.'"  *Id.*  Travelers subsequently contacted Mass Mutual's CEO, and Litman sought recovery for slander based on statements made by the CEO regarding Litman during the communication, including that Litman "didn't pay his business bills."  *Id.* at 1555-56.  The Eleventh Circuit reversed judgment in favor of Litman, finding that Mass Mutual's statement was not actionable because "Litman knew, prior to authorizing [Travelers] to call [Mass Mutual], that Mass Mutual's position was that Litman was in a financial mess at the time of his termination."  *Id.* at 1560-61.  The Court held "that Litman invited and consented to the publication of the alleged defamation to" Travelers.  *Id.*

 As in *Litman*, Plaintiff invited and consented to the publication of the alleged defamation to National Western here.  Plaintiff was admittedly aware of his failure to pay the chargeback assessed by Allianz and that he was posted on Vector One at the time he applied to National Western for an agency contract.  Compl. ¶ 14.  Indeed, Plaintiff not only self-published the existence of the Vector One post to National Western in his application, but he expressly authorized National Western to obtain the information posted on Vector One and subsequently disclosed by Allianz.  DE 76-5, pp. 3-4.  Plaintiff also released Allianz "from any and all liability

whatsoever which results, or might result, from the disclosure of" that information.  *Id.* at 3. Given these undisputed facts, Plaintiff cannot satisfy the publication element of his defamation claim under the consent/invited defamation rule.  *See Lopez v. Ingram Micro, Inc.*, 1997 WL 401585, at \*5-6 (S.D. Fla. Mar. 18, 1997) (granting defendant's motion for summary judgment on slander claim where plaintiff invited alleged defamation).

## B.     The Allegedly Defamatory Statements Are True.

Plaintiff's defamation claim also fails, as a matter of law, because the statements posted on Vector One and made to National Western are true.  Falsity is an element of Plaintiff's claim, *Jews For Jesus*, 997 So. 2d at 1106, and "truth is a defense."  *Rosenberg v. Am. Bowling Congress*, 589 F. Supp. 547, 551 (M.D. Fla. 1984).  The undisputed facts show that Allianz posted Plaintiff's name and Social Security number and the contact information for an Allianz employee on Vector One.  Nicholls Dep. at Exh. 26 (DE 64-7, p. 10).  Plaintiff does not dispute the truth of any of that information.  *See* Hill Dep. at 61:24–62:7 (DE 64-9, pp. 2-3).

To the extent that Plaintiff claims that his presence on Vector One insinuated that he owed Allianz a debt, that statement is also true.  The record demonstrates that Allianz was contractually authorized to assess chargebacks to Plaintiff, and that Plaintiff was contractually obligated to repay them.   Hill's Agent Agreement incorporates Allianz's Commission Guidelines.  Rice Dep. at Exh. 25 (DE 64-5, pp. 43-44).  The Commission Guidelines state:

> **Chargebacks**
> You <u>will be subject</u> to chargebacks and <u>agree to repay</u> the Company the following amounts:
> - **Premium Refunds**   In the case of any provision resulting in a refund of premiums, the Company may, <u>at its selection</u>, charge your account at any time for the commissions paid.
>                            \* \* \*
> **Chargebacks for your agents**
> - Commissions paid to you as overrides on policies produced by your agents will be charged back on the same basis and at the same time that your agents' commissions are subject to chargeback.

- In the event of any chargebacks after the termination of your Agreement, <u>you agree to pay</u> the Company the amount of such chargebacks at the Company's request. Interest will be charged on any charges which are not paid within thirty days.

*Id.* (underline added). The Commission Guidelines afforded Allianz the discretion to decide when and whether to assess chargebacks following a refund of premium and are clear that, in the case of a premium refund, Allianz may chargeback commissions to an agent "at its selection" and "at any time." *Id.* Plaintiff agreed to the terms of the incorporated Commission Guidelines and agreed to repay chargebacks assessed by Allianz when he executed his Agent Agreement. *See id.*; Hill Dep. at 34:17–35:11 (DE 64-8, pp. 35-36).

The chargeback at issue resulted from Allianz's refund of premium after the Non-Party exercised the "free look" provision contained in her annuity contract. *See* Rice Dep. at Exhs. 15 & Exh. 16 (DE 64-5, pp. 17, 19). The Guidelines' "Premium Refunds" provision, therefore, controls here and afforded Allianz the authority to charge back the commissions and override paid on the sale of the Non-Party's annuity. Accordingly, the chargeback at issue was expressly authorized by the terms of the Commission Guidelines, which also rendered Plaintiff contractually obligated to repay it.[5]

The reasoning in *Gonsalves v. Sammons Financial Group, Inc.* is persuasive. 2007 WL 2840397, at *10 (Cal. Ct. App. Oct. 2, 2007).[6] There, the court affirmed summary judgment for

---

[5] Plaintiff contends that the information posted on Vector One was false because Allianz "did not report to Vector One that the [chargeback] claim was contested." Hill Dep. at 61:24–62:7 (DE 64-9, pp. 2-3). This point, however, is immaterial and does not render the Vector One post false or untrue. The debt was not posted on Vector One until after Plaintiff had been repeatedly advised of the chargeback, had the opportunity to appeal it, and was advised in writing of Allianz's decision on the appeal. After the conclusion of that procedure, Allianz reasonably and transparently posted Plaintiff on Vector One when the debt remained unpaid. *See supra* pp. 6-8. Nonetheless, any inconsistency with Vector One's policies and procedures is irrelevant to the pertinent question of whether the *statement* was itself false or untrue.

[6] Although not binding, federal courts are not precluded from considering the unpublished decisions of California courts and their reasoning. *See Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 943 n.4 (9th Cir. 1997).

an insurer on a similar defamation claim.  *See id.* at *1, 10.  The insurer posted the agent on

Vector One after the insurer charged back commissions to the agent for two annuities, which

were cancelled prematurely, and after the agent failed to repay the commissions.  *Id.*  The court

determined that the insurer "made no false statement to Vector One when it reported that

plaintiff had a balance owing" because "the plain language of the [agent's] Agency Contract

require[d] repayment of commissions if, as [t]here, death of the annuitant occurs within one year

of issuance of the policies."  *Id.* at *10.  In rejecting the agent's argument that the chargeback

was unfair, the court held that plaintiff was "seeking a windfall profit by being able to retain

commissions that, according to the terms of [his] Agency Contract, were never earned."  *Id.*

The same result is warranted here.  The Commission Guidelines authorized and obligated

Plaintiff to repay the chargeback.  Plaintiff concedes that he knew he would be posted to Vector

One for failing to repay the chargeback, and it is undisputed that this is standard practice in the

insurance industry.  *See* Compl. ¶¶ 10-11, 14; Hager Decl. ¶ 5.  Plaintiff does not dispute that he

failed to repay the chargeback.  Hill Dep. at 50:16-18 (DE 64-8, p. 51).  Given these undisputed

facts, Allianz's statements on Vector One were true.  For the same reasons, the statements made

by Allianz to National Western regarding Plaintiff's debt (*see supra* pp. 8-9) are equally true.

*See Rosenberg*, 589 F. Supp. at 551 (statement that accurately represented what a committee

found could not "form the basis of a defamation action").

C.     **The Allegedly Defamatory Statements Are Privileged.**

Even if Plaintiff could establish publication and falsity, which he cannot, Allianz is still

entitled to summary judgment because the alleged defamatory statements were privileged as a

matter of law and no evidence exists that would overcome the privilege:

> In Florida, "[a] communication made in good faith on any subject
> matter by one having an interest therein, or in reference to which
> he has a duty, is privileged if made to a person having a
> corresponding interest or duty, even though it contains matter

> which would otherwise be actionable, and though the duty is not a legal one but only a moral or social obligation." *Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984) (internal quotation marks omitted). . . . If the speaker can show that his or her statements were uttered in a privileged context, then a presumption of good faith arises. *Id.* To overcome the presumption of good faith, the plaintiff must prove that the defendant's statements were uttered with express malice. *Id.*

*Black v. Adv. Neuromodulation Sys., Inc.*, 2014 WL 1303656, at *8 (N.D. Fla. Mar. 27, 2014).

Here, Allianz's disclosure of Plaintiff's unpaid chargeback to National Western through Vector One was privileged. When an agent or FMO principal fails to repay a chargeback, it is custom and practice in the industry for insurers to post such matters to Vector One. Hager Decl. ¶ 16; Rice Decl. ¶ 5; Nicholls Dep. at 10:1-3, 31:21–32:4 (DE 64-6, pp. 11, 32-33). It is undisputed that both Allianz and the other insurers who subscribe to Vector One have a corresponding interest in knowing about agents with unpaid debts. Insurers obtain and use information from Vector One to make informed agent contracting decisions, collect debts, and reduce losses resulting from unpaid chargebacks. *See* Nicholls Dep. at 6:19-23, 46:7-12 (DE 64-6, pp. 7, 47); Compl. at Exh. 14 ("Vector One, a service to which National Western subscribes [ ], shares information obtained from other subscribing companies that is necessary in our contracting process."). Accordingly, Allianz's post to Vector One "clearly [comes] within the scope of the privilege based on mutuality of interest of the speaker and listener," *Nodar*, 462 So. 2d at 809, and is akin to situations in which Florida courts have applied the privilege. *See, e.g.*, *Boehm v. Am. Bankers Ins. Grp., Inc.*, 557 So. 2d 91, 93 (Fla. 3d DCA 1990) (communications between prospective and former employers regarding an employee); *Black*, 2014 WL 1303656, at *8 (mutual interest in job performance of employees and ensuring employee compliance with industry regulations and ethical standards).

In light of Allianz's legitimate claim of privilege as to the statements sued upon, the burden shifts to Plaintiff to overcome the presumption of good faith by showing actual or express

malice.[7]  Malice "in the context of a qualified privilege must be actual malice, i.e., 'ill will, hostility and an evil intention to defame and injure.'"  *Rush-Hampton*, 419 F. Supp. at 19 (citation omitted).  For actual malice to be found, a desire to harm the plaintiff must be the *primary motivation* of the defendant.  *Black*, 2014 WL 1303656, at *8.  Plaintiff cannot show any ill will, hostility, or evil intention on the part of Allianz; to the contrary, the record evidence shows that prior to the chargeback and Vector One post, Plaintiff was on good terms with Allianz.  Hill Dep. at 45:4-13 (DE 64-8, p. 46).  Further, the evidence demonstrates that Allianz (1) charged back commissions to Plaintiff pursuant to the express terms of his Agent Agreement (*supra* pp. 13-15); (2) notified Plaintiff of the cause of the chargeback (*supra* pp. 6-8); (3) permitted Plaintiff to appeal the chargeback in writing (*id.*); and (4) referred the matter to a Complaint Oversight Committee, which considered the appeal, notified Plaintiff in writing of the Company's final determination, and sent several letters to Plaintiff reminding him of the debt and possible consequences of non-payment, including reporting the debt to debt-collection agencies (*id.*).  Following the appeal process, Allianz no longer considered the chargeback disputed.  *See* Rice Decl. ¶ 4; Hager Decl. ¶ 17.  Plaintiff was posted on Vector One only after that process was complete and after, with repeated notices to Plaintiff, his chargeback reached 120 days past due.  *See supra* pp. 6-8.  The process was fair and transparent and, while the end result was not in Plaintiff's favor, was hardly malicious or hostile toward him.  Rather, the evidence demonstrates that Plaintiff was posted on Vector One in accordance with standard industry practices and in connection with Allianz's efforts to collect on a legitimate debt.  None of these facts give rise to an inference that Allianz bore any ill will, hostility, or evil intention toward Plaintiff, no less that its *primary* motivation in posting Plaintiff on Vector One was to

---

[7] *See Gunder's Auto Ctr. v. State Farm Mut. Auto. Ins. Co.*, 422 F. App'x 819, 821-22 (11th Cir. 2011); *Rush-Hampton Indus., Inc. v. Home Ventilating Inst.*, 419 F. Supp. 19, 22 (M.D. Fla. 1976).

harm Plaintiff and not simply to collect on the debt due and owing.  *See Lofton-Taylor v. Verizon Wireless*, 262 F. App'x 999, 1002 (11th Cir. 2008) (granting summary judgment for defendant where "there [w]as no evidence that the communication Verizon made was done 'with malice or willful intent to injure such consumer'" but was "done by Verizon with the intent to collect the amount of its check from Certegy pursuant to their contract").[8]

Allianz is thus entitled to summary judgment based on its privilege defense.  *See Lefrock v. Walgreens Co.*, 2015 WL 226034, at *3 (M.D. Fla. Jan. 16, 2015) (granting summary judgment to defendant where plaintiff could not "rebut the good faith presumption by producing admissible evidence of express malice"); *Rosenberg*, 589 F. Supp. at 552 (similar); *Rush-Hampton*, 419 F. Supp. at 22 (similar).

### D.      Plaintiff's Claim For Defamation As To Any Statements Made To A Debt Collector Or To Credit Reporting Agencies Fails As A Matter Of Law

Finally, Plaintiff's defamation claim also fails to the extent it is premised on any statements regarding his unpaid chargeback made to a debt collection agency known as Stuart Allan & Associates, Inc. or to credit reporting agencies.  *See* Compl. ¶¶ 23-24 & Exhs. 11, 13, 14; Hill Dep. at 62:18–63:5 (DE 64-9, pp. 3-4).  The record reflects that Plaintiff was advised on November 30, 2009 that his outstanding debt was sent to Stuart Allan for collection and that Stuart Allan would report the debt to the credit bureaus if he failed to pay.  Compl. at Exh. 11. To the extent Plaintiff is claiming that he was defamed by the "report" of his debt to Stuart Allan

---

[8] The only purported "evidence" regarding Plaintiff's allegation that Allianz acted with malice is Plaintiff's conclusory and self-serving testimony, taken by his own counsel, that he "believe[d]" the Vector One post was "malicious" because "Allianz charged [Plaintiff] for failure to obtain a policy receipt, when the contract says that you don't have to obtain a policy receipt for less than 250,000," "Allianz didn't contest the existence of the New Hampshire Insurance Statute 401.04(h)," "Allianz didn't notify Vector One that [Plaintiff] disputed the contract, and . . . Allianz violated the contract with [Plaintiff] in numerous places."  Hill Dep. at 287:23– 288:12 (DE 64-12, pp. 48-49).   Plaintiff's conclusory allegations do not prevent summary judgment for Allianz.  *See, e.g.*, *Hodge v. Orlando Utils. Comm'n*, 2011 WL 250400, at *7 (M.D. Fla. Jan. 26, 2011).  Moreover, the basis for Plaintiff's malice arguments are immaterial and legally erroneous.  *See* DE 76 at 5 n.7, 19-22.

or the credit bureaus, his claim fails because, as demonstrated above, the statement that Plaintiff owed Allianz a debt is true. *See supra* pp. 13-15. Moreover, there is no allegation or record evidence that anyone but Plaintiff received or viewed his communications with Stuart Allan or his credit report or that his reputation or business were damaged as a result of them. *See* Compl. ¶¶ 6-34 & Exhs. 11, 13, 14; Hill Dep. at 51:20–52:18, 55:5-16 (DE 64-8, pp. 52-53, 56) (Plaintiff's defamation claim focuses on alleged damages arising from the Vector One post and the publication of the post to National Western). In the absence of such allegations or evidence, Plaintiff cannot succeed on the publication and damages elements of his defamation claim. *See Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So. 2d 419, 421 (Fla. 3d DCA 1995) (publication to a third person essential for defamation claim); *Jews For Jesus*, 997 So. 2d at 1106 (publication and actual damages elements of defamation claim).[9]

## III. THE SINGLE-ACTION RULE BARS PLAINTIFF'S REMAINING CLAIM

Because Allianz is entitled to summary judgment on Plaintiff's defamation claim, Plaintiff's corresponding tortious interference claim also fails a matter of law. Florida applies the single-action rule in the context of defamation claims. *See Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992). As one court has explained:

> In Florida, a single publication gives rise to a single cause
> of action. The various injuries resulting from it are merely items

---

[9] Nor can Allianz be held liable, as a matter of law, for the publication of Plaintiff's outstanding debt to any credit bureau. Plaintiff's debt was reported to the credit bureaus by Stuart Allan (Compl. at Exhs. 11 & 13; Hill Dep. at 63:3-5); Allianz does not report agent debts to credit bureaus. Exhibit A hereto at 4. Even if it did, Plaintiff's defamation claim would be preempted by the Fair Credit Reporting Act, which "provides a qualified immunity from state law defamation actions" where "a company furnishes credit information about a consumer to a credit reporting agency" unless "the information [ ] provided was both false and also given with the malicious and willful intent to damage the consumer." *Lee v. Sec. Check, LLC*, 2010 WL 3075673, at *4-5 (M.D. Fla. Aug. 5, 2010); 15 U.S.C. § 1681h(e). Because any report that Plaintiff had an outstanding debt with Allianz was true and there is no credible evidence showing that Allianz had any malicious and willful intent to damage Plaintiff, the defamation claim fails. *See Lofton-Taylor*, 262 F. App'x at 1002; *Bermudez v. Equifax Info. Servs., LLC*, 2008 WL 5235161, at *4 (M.D. Fla. Dec. 15, 2008).

> of damage arising from the same wrong. . . .   The single
> publication/single action rule . . . does not permit multiple actions
> when they arise from the same publication upon which a failed
> defamation claim is based. . . .   Thus, if the defamation count fails,
> the other counts based on the same publication must fail as well
> because the same privileges and defenses apply.

*Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA

2002) (internal citations and quotation marks omitted).

Here, Plaintiff's claim for tortious interference arises from the same publication upon

which his failed defamation claim is based.  The claim incorporates and is premised on the same

factual allegations as his defamation claim, both of which center on "Allianz's false debit

report."  Compl. ¶¶ 36, 38, 40; Hill Dep. at 65:15–66:5 (DE 64-9, pp. 6-7).  As in *Callaway*

*Land*, Plaintiff's tortious interference claim simply seeks damages for alleged injuries resulting

from Allianz's post to Vector One.  *See id.*  Plaintiff has not pled, and can tender no evidence of,

any other facts or circumstances that would give rise to an independent claim of tortious

interference.  *See infra* Section IV.  Thus, Plaintiff's tortious interference claim is barred by the

single-action rule, and Allianz is entitled to summary judgment.  *See Pelc v. Nowak*, 2012 WL

2368889, at *2 (M.D. Fla. June 22, 2012) (single-action rule barred tortious interference claim

following summary judgment to defendant on defamation claim); *Kamau v. Slate*, 2012 WL

5390001, at *8 (N.D. Fla. Oct. 1, 2012), *rep. & rec. adopted*, 2012 WL 5389836, at *1 (N.D. Fla.

Nov. 5, 2012) (similar); *Ovadia v. Bloom*, 756 So. 2d 137, 140-41 (Fla. 3d DCA 2000) (similar).

## IV.      ALLIANZ IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM

Plaintiff's tortious interference claim is premised on his allegation that, through the

Vector One post, Allianz interfered with Plaintiff's plan to become appointed by National

Western and to establish an independent marketing organization in Puerto Rico to sell low face-

value life insurance products issued by National Western.  *See* Compl. ¶ 37.  In order to prevail

on his claim, Plaintiff must prove "(1) the existence of a business relationship [that affords the plaintiff existing or prospective legal or contractual rights]; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994) (citation and internal quotation marks omitted).   Here, the record demonstrates that Allianz did not knowingly, intentionally, or unjustifiably interfere with Plaintiff's plan.  Allianz is, thus, entitled to judgment as a matter of law on the tortious interference claim.

### A.    Allianz Had No Knowledge Of Plaintiff's Plan.

Plaintiff's tortious interference claim first fails because he cannot establish that Allianz had knowledge of Plaintiff's alleged "expectancy of entering into an agency relationship with National Western . . . as an insurance sales representative in Puerto Rico" and of "establish[ing] an independent marketing organization . . . in Puerto Rico" (the "Puerto Rico Plan").  Compl. ¶ 37.  Indeed, Plaintiff conceded that he never informed Allianz of his Puerto Rico Plan.  Hill Dep. 140:11-22 (DE 64-10, p. 21); Exhibit B hereto at 6-7.  In light of Plaintiff's admission, and in the absence of any other record evidence that supports the knowledge element, Plaintiff's tortious interference claim fails as a matter of law.

### B.    Plaintiff Cannot Establish Intentional Interference By Allianz.

Plaintiff must also prove that Allianz "manifested a specific intent to interfere" with Plaintiff's expected business relationship.  *Hodge*, 2011 WL 250400, at *16.  "'A cause of action for tortious interference requires a showing of . . . an intent to damage the business relationship.'"  *Tardif v. PETA*, 829 F. Supp. 2d 1219, 1231 (M.D. Fla. 2011) (quoting *Networkip, LLC v. Spread Enters., Inc.*, 922 So. 2d 355, 358 (Fla. 3d DCA 2006)).  "Proof of the requisite intent is necessary as '[t]here is no such thing as a cause of action for interference

-21-

which is only negligently or consequentially effected.'" *Maxi-Taxi of Fla., Inc. v. Lee Cnty. Port Auth.*, 301 F. App'x 881, 885-86 (11th Cir. 2008) (quoting *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1223-24 (Fla. 3d DCA 1980)).   Here, there is no record evidence that Allianz had a specific intent to interfere with Plaintiff's Puerto Rico Plan.

Rather, the record demonstrates that Allianz, as part of its standard procedure for collecting unpaid chargebacks, posted Plaintiff on Vector One and responded to an e-mail from National Western requesting limited information about Plaintiff's debt.  Fichera Decl. at Exh. 9; *supra* pp. 8-9.  It is undisputed that Allianz had no other communications with, and provided no additional information to, National Western regarding Plaintiff.  Rice Decl. ¶ 7.  Nothing in this record supports an inference that Allianz intentionally interfered with Plaintiff's Plan.

*Tardif* is analogous.   There, the plaintiff sued PETA after PETA disclosed to his employer, the Lee County Sheriff's Office ("LCSO"), that he had reported suspected animal abuse by one of his co-workers to PETA.  *Tardif*, 829 F. Supp. 2d at 1224.  The plaintiff alleged that he was forced to resign from the LCSO as a result and asserted a claim against PETA for tortious interference with his employment relationship.  *See id.* at 1223-24.  The Court found that there was "no evidence which would support an inference that PETA's disclosure of information was done with an intent to interfere with or damage the employment relationship between [the plaintiff] and the LCSO."  *Id.* at 1231.  Rather, the evidence showed that the disclosure was made at the insistence of the LCSO, and the court granted summary judgment to PETA.  *See id.* at 1224, 1231, 1235.  *Boehm v. American Bankers Insurance Group, Inc.* is another example. There, the court held that remarks made privately by an insurance company president about a former employee "in response to an inquiry from an agent of a prospective employer would not be actionable as a case for . . . tortious interference."  557 So. 2d 91, 97 (Fla. 3d DCA 1990).

Similarly, it is undisputed here that Allianz did nothing more than post Plaintiff on

Vector One in a routine effort to collect a chargeback debt and respond to a request from National Western for limited information about Plaintiff's debt.[10]  Allianz did not independently reach out to National Western or engage in any other communications with National Western. *See supra* pp. 8-9.  Allianz's disclosure of information in response to National Western's request does not evidence any specific intent by Allianz to interfere with Plaintiff's business or agency relationships.  Consistent with *Tardif* and *Boehm*, these facts do not satisfy the intent element of Plaintiff's tortious interference claim; summary judgment should, therefore, be granted in Allianz's favor.  *See, e.g.*, *Hodge*, 2011 WL 250400, at *17; *Maxi-Taxi*, 301 F. App'x at 886.

## C.    Any Alleged Interference By Allianz Was Justified And Privileged.

To prevail on his tortious interference claim, Plaintiff must also show that any alleged interference by Allianz was unjustified.  *See Mattocks v. Black Entm't Television LLC*, 2014 WL 4101594, at *5 (S.D. Fla. Aug. 20, 2014; *Bortell v. White Mountains Ins. Grp., Ltd.*, 2 So. 3d 1041, 1048 (Fla. 4th DCA 2009).  Plaintiff can make no such showing because it is indisputable that Allianz posted Plaintiff on Vector One to safeguard its financial or economic interests.

As a matter of law, there can be no claim for tortious interference where, as here, the action complained of was undertaken to safeguard or promote one's financial or economic interest.  *Barco Holdings, LLC v. Terminal Inv. Corp.*, 967 So. 2d 281, 293 (Fla. 3d DCA 2007); *Genet Co. v. Annheuser-Busch, Inc.*, 498 So. 2d 683, 684 (Fla. 3d DCA. 1986).  "Protecting a company's own economic interest to reduce the risk of incurring further loss does not constitute intent to damage within the meaning of a cause of action for internal interference with business relationship."  *Networkip*, 922 So. 2d at 358.  Under Florida law, such actions are privileged and

---

[10] Notably, Plaintiff has not identified any reason that Allianz would have had to interfere with Plaintiff's Plan.  Plaintiff admitted that he never had any falling out with Allianz.  Hill Dep. at 45:4-9 (DE 64-8, p. 46).  Plaintiff also testified that Allianz was not a competitor in the low face value term life insurance market in Puerto Rico on which Plaintiff was focusing his business.  *Id.* at 38:10-20, 43:8-25 (DE 64-8, pp. 39, 44).  There is, thus, no evidence of animus toward Plaintiff or that Allianz had any interest in Plaintiff's business.

non-actionable.  *See id.  Ethyl Corp. v. Balter* is an example.  There, the court ruled that the defendant "was, as a matter of law, privileged to act as it did" where its "actions were reasonably directed to the recovery of" a debt owed the defendant by the corporation of which plaintiff was once president.  386 So. 2d at 1221-22, 1224-25.  Because the defendant's actions to recover the debt were taken to safeguard or promote its financial interests, the plaintiff's tortious interference claim was "entirely non-actionable," and judgment was entered for the defendant.  *Id.*

The record is clear that Plaintiff was posted on Vector One after he failed to pay his chargeback debt to Allianz in violation of the terms of his Agent Agreement.  *See supra* pp. 13-15.  Allianz—like many other insurance carriers—uses Vector One in its efforts to recover outstanding chargeback debts (also known as "debit balances").  Rice Decl. ¶ 6; Nicholls Dep. at Exh. 28 (DE 64-7, pp. 18, 20, 21).  Given the record evidence that Allianz's posting of Plaintiff to Vector One was made as part of its justifiable debt-collection efforts, the actions complained of are privileged, and Allianz is entitled to summary judgment on Plaintiff's tortious interference claim.  *See Ethyl*, 386 So. 2d at 1222-25; *see also Barco Holdings*, 967 So. 2d at 293 (no tortious interference claim where alleged action was taken to further valid business interests).

Finally, in order for Allianz's privilege to be forfeited, Plaintiff must show that "malice" was the *sole* basis for Allianz's alleged interference.  *See Ernie Haire Ford v. Ford Motor Co.*, 260 F.3d 1285, 1294 n.9 (11th Cir. 2004) ("The privilege is qualified only where malice is the *sole* basis for the interference.  In other words, the party must be interfering *solely* out of spite, to do harm, or for some other bad motive.") (internal citation omitted).  Here, Plaintif has alleged no facts, and there is no record evidence, that would show that the Vector One post and/or Allianz's response to National Western's inquiry was made *solely* out of malice for Plaintiff and not simply to collect on a valid debt.  *See* Compl. ¶¶ 35-41; Hill Dep. at 65:15-66:16 (DE 64-9, pp. 6-7).  Plaintiff thus cannot succeed on his tortious interference claim because he cannot

establish malice sufficient to overcome Allianz's privilege to safeguard its financial interest.

## V.       PLAINTIFF'S DAMAGES CLAIMS ARE BARRED BY THE DOCTRINE OF AVOIDABLE CONSEQUENCES

Proof of compensable damages is a necessary element of both defamation, *Jews For Jesus*, 997 So. 2d at 1106, and tortious interference claims, *Ethan Allen*, 647 So. 2d at 814. Plaintiff's damages claims are barred by the doctrine of avoidable consequences, which "prevents a party from recovering those damages inflicted by a wrongdoer that the injured party could have reasonably avoided." *Sys. Components Corp. v. Fla. Dep't of Transp.*, 14 So. 3d 967, 982 (Fla. 2009) ("The doctrine does not permit damage reduction based on what 'could have been avoided' through Herculean efforts. Rather, the injured party is only accountable for those hypothetical ameliorative actions that could have been accomplished through 'ordinary and reasonable care' without requiring undue effort or expense.") (internal citations omitted); *Graphic Assocs., Inc. v. Riviana Rest. Corp.*, 461 So. 2d 1011, 1014 (Fla. 4th DCA 1984) (similar). For Plaintiff to have simply paid off the $1,400 debt (under protest) while his application to with National Western was pending, thereby avoiding claimed losses of approximately $350,000 (Hill Dep. 74:12-15, DE 64-9, p. 15), would not have required him to exert "Herculean efforts" or to suffer any extraordinary or undue effort or expense. Plaintiff's failure to reasonably avoid the consequences of the outstanding debt, even assuming for the sake of argument that Allianz could be found liable to Plaintiff (which it cannot), would prevent Plaintiff from recovering any damages, negating necessary elements of Plaintiff's claims and entitling Allianz to summary judgment as a matter of law.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should grant final summary judgment in favor of Allianz on all claims asserted by Plaintiff in the Complaint.

Dated:  October 2, 2015.

/s/  Stephanie A. Fichera
Irma Reboso Solares (Fla. Bar No. 797073)
isolares@cfjblaw.com
Stephanie A. Fichera (Fla. Bar No. 55813)
sfichera@cfjblaw.com
Scott E. Byers (Fla. Bar No. 68372)
sbyers@cfjblaw.com
CARLTON FIELDS JORDEN BURT, P.A.
Miami Tower, Suite 4200
100 S.E. Second Street
Miami, Florida  33131-2113
Telephone:  (305) 530-0050
Facsimile:   (305) 530-0055

*Attorneys for Defendant Allianz Life Insurance Company of North America*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of October, 2015, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send notification of such filing to

all counsel of record.

 /s/  Stephanie A. Fichera
Stephanie A. Fichera

101284038.9