# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**REX D. HILL,**

      **Plaintiff,**

v.                                                 Case No: 6:14-cv-950-Orl-41KRS

**ALLIANZ LIFE INSURANCE**
**COMPANY OF NORTH AMERICA,**

      **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA'S SECOND RENEWED MOTION FOR ATTORNEY'S FEES AND COSTS (Doc. No. 145)
>
> **FILED:** August 31, 2017

## I. PROCEDURAL BACKGROUND.

Plaintiff Rex D. Hill sued Defendant Allianz Life Insurance Company of North America for slander (Count 1) and tortious interference with an expectancy (Count 2). Plaintiff moved for partial summary judgment as to Defendant's liability for slander (Doc. No. 64), and Defendant moved for summary judgment on both counts of the complaint (Doc. No. 84). On February 17, 2016, the Court entered an Order denying Plaintiff's motion for partial summary judgment and granting Defendant's motion for summary judgment. Doc. No. 117. Judgment in Defendant's favor was entered on February 18, 2016. Doc. No. 119.

Defendant filed a proposed bill of costs and a motion for attorney's fees and costs on March 4, 2016. Doc. Nos. 120, 121. On March 11, 2016, Plaintiff moved for reconsideration of the summary judgment order. Doc. No. 122.[1] I therefore denied the motion for attorney's fees and costs without prejudice and allowed Defendant to refile its motion within fourteen (14) days after the Court ruled upon the motion for reconsideration. Doc. No. 128. The Court denied the motion for reconsideration on December 19, 2016. Doc. No. 136.

Defendant filed a renewed motion for attorney's fees and costs on January 3, 2017. Doc. No. 137. Shortly thereafter, Plaintiff appealed the denial of the motion for reconsideration to the United States Court of Appeals for the Eleventh Circuit. Doc. No. 138. I denied the renewed motion for attorney's fees and costs in light of the appeal and gave Defendant twenty (20) days to refile its motion after issuance of a mandate by the Eleventh Circuit. Doc. No. 140. On July 19, 2017, the Eleventh Circuit issued an opinion and order affirming this Court's rulings. Doc. No. 143. The Eleventh Circuit's mandate issued on August 17, 2017. Doc. No. 144.

Defendant filed its second renewed motion for attorney's fees and costs on August 31, 2017. Doc. No. 145. In the motion, Defendant seeks $335,033.45 in attorney's fees (representing fees at both the trial and appellate levels). Defendant also seeks to recover $7,003.75 in costs. In support of its motion, Defendant submitted the following:

- The Proposal for Settlement that it served upon Plaintiff (Doc. No. 145-1);

- A declaration from its counsel, Irma Reboso Solares, Esq., in support of the motion for attorney's fees and costs (Doc. No. 145-2);

- A copy of Plaintiff's mandatory disclosures (Doc. No. 145-3);

- Plaintiff's Response To Allianz Third Production Request (Doc. No 145-4);

---

[1] Plaintiff filed an amended motion for reconsideration on March 14, 2016. Doc. No. 123.

- Copies of Plaintiff's Notices of Deposition (Doc. No. 145-5).

Plaintiff filed a response in opposition to the motion for attorney's fees. Doc. No. 148. Defendant filed a reply brief in support of its motion on October 27, 2017. Doc. No. 152. At the direction of the Court, Defendant filed a Supplemental Declaration of Irma Reboso Solares. Doc. No. 156.

In this Report and Recommendation, I address only the issue of entitlement to an award of attorneys' fees and the request for an award of taxable costs. If the Court finds that Defendant is entitled to fees, then I will address the amount of attorneys' fees to be awarded in a separate Report and Recommendation.[2]

## II. RELEVANT FACTS.[3]

Plaintiff was engaged in the insurance business and operated his own Field Marketing Organization ("FMO"), through which he began soliciting insurance policies on behalf of LifeUSA Insurance Company ("LifeUSA") in 1991. LifeUSA merged into Allianz in 2002. Thereafter, Plaintiff continued to solicit insurance policies and annuities on Defendant's behalf. Plaintiff sold his FMO business in 2006.

In or about July 2009, Defendant assessed a chargeback against Plaintiff's account.[4] Plaintiff was first notified of the chargeback in July 2009 by a commission statement reflecting a negative charge. Plaintiff disputed the chargeback and argued that it was improper for Defendant

---

[2] I reserve the issue of the amount of attorneys' fees to be awarded because Defendant had a flat-fee agreement for a portion of the time at issue and an hourly fee agreement during a different portion of the time at issue. Computing a lodestar fee under each different fee arrangement may require further development of the record.

[3] Except where noted, this statement of facts is taken from the Court's summary judgment order. Doc. No. 117.

[4] A chargeback is when an agent has to pay back a commission that he previously received or was responsible for to an insurance company based on the refund of a policy sold by the agent or an individual for whom he is responsible. Doc. No. 117, at 2.

to make the assessment against him. Defendant informed Plaintiff that it had reviewed his claim and determined that the chargeback was appropriate. Defendant indicated that its decision was final.

Defendant subsequently made efforts to collect on the outstanding debt. It notified Plaintiff that failure to timely pay the debt would result in the debt being reported to collection agencies and to Vector One Operations, LLC ("Vector One"), a company tailored to providing "agent screening tools" to insurance companies, such as the ability to view outstanding debts an agent or potential agent owes to an insurance company.[5] When Plaintiff refused to pay the chargeback, Defendant filed a report with a collections agency and with Vector One. The debt was not reported to Vector One as a disputed debt.

In October 2012, Plaintiff applied to sell insurance and annuity contracts in Puerto Rico for National Western Life Insurance Company ("National Western"). Plaintiff gave National Western permission to conduct a limited background investigation, including investigation into his credit. Plaintiff also made an addendum to his application, in which he informed National Western of the unpaid chargeback from Defendant and the fact that Defendant had reported him to Vector One. Plaintiff stated in the addendum that he did not believe that the chargeback was properly assessed. National Western conducted a Vector One search on Plaintiff and ultimately declined to employ him because of the outstanding debt to Defendant.

After National Western declined to employ him, Plaintiff filed this case in the circuit court of the Eighteenth Judicial Circuit in and for Brevard County, Florida on February 8, 2013, alleging state law claims for defamation and tortious interference with an expectancy. Plaintiff alleged that

---

[5] The posting of agent debts to Vector One is common in the insurance industry. Doc. No. 117, at 3.

Defendant defamed him when it reported an undisputed debt to Vector One that was subsequently published to National Western in response to his application for employment, thereby tortiously interfering with his expectancy of future employment. He further alleged that as a result of the alleged slander and tortious interference, he suffered damages to his business income and reputation and lost net income revenue. He sought special damages, general damages, interest, and court costs for the slander claim and damages, interest, and court costs for the tortious interference claim. In his original complaint, Plaintiff averred that the case was "an action for damages greater than $15,000.00 but less than $75,000.00." Doc. No. 2 ¶ 1. On May 20, 2014, Plaintiff served a motion to amend the complaint and a proposed amended complaint on Defendant. The motion included a footnote stating, "Parenthetically, it should be noted that Hill no longer restricts the amount of damages claimed in Para. No. 1" of the original complaint. Doc. No. 4, at 2. The proposed amended complaint alleged that "This is an action for damages greater than $75,000.00." Doc. No. 4-1 ¶ 1. Based on the new allegations, Defendant removed the case to this Court pursuant to its diversity jurisdiction.[6] Doc. No. 1.

On April 20, 2015, Defendant served Plaintiff with a proposal for settlement pursuant to section 768.79, Florida Statutes. Defendant proposed to pay Plaintiff $22,500.00 "in full and final

---

[6] Because the state court had not yet ruled on the motion to amend the complaint at the time of removal, Plaintiff filed a motion to remand arguing that the amount-in-controversy requirement for diversity jurisdiction was not satisfied. The Court denied the motion for remand, explaining that "[t]he amount in controversy is not controlled by the court, [but] is controlled by Plaintiff's claims," and therefore, Defendant was not required to wait for the state court to rule on the motion to amend before removing the case to this Court. Doc. No. 26, at 5. Additionally, the Court ruled that the one-year limitation on removal of diversity cases did not apply in this case because Plaintiff, in bad faith, concealed information about his alleged damages. Doc. *Id.* at 6-11.

The Court later granted Plaintiff leave to amend the complaint for the limited purpose of adding a nominal party and complying with a Confidentiality Protective Order that had been entered by the state court. Doc. No. 36. However, the amended complaint far exceeded the scope of the permitted amendments. The Court ultimately struck the amended complaint. Doc. No. 57. As a result, the original complaint remained the operative complaint.

settlement and resolution of all of [his] claims that have been, or could have been, asserted against Allianz in the above-captioned litigation." Doc. No. 145-1, at 1.

Plaintiff did not accept the proposal for settlement and the parties continued to litigate the case, including mediation, deposition discovery, filing *Daubert* motions, filing cross-motions for summary judgment, and filing motions in limine. The Court ultimately granted Defendant's motion for summary judgment on the defamation claim finding that it was barred by the statute of limitations. Doc. No. 117. Because his tortious interference claim was based on the same underlying facts as his failed defamation claim, the Court found that this claim violated the single publication/single action rule, and it too failed. *Id.* Following the Court's entry of summary judgment in Defendant's favor, the parties continued to litigate Plaintiff's motion for reconsideration and Plaintiff's appeal to the Eleventh Circuit.

### III. DISCUSSION.

#### A. *Entitlement to Attorneys' Fees.*

Defendant contends that it is entitled to attorneys' fees by virtue of having served Plaintiff with a proposal for settlement pursuant to section 768.79. Section 768.79(1) provides that "if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees . . . if the judgment is one of no liability." To be valid, a proposal for settlement must: (1) be in writing and state that it is being made pursuant to section 768.79; (2) name the party making it and the party to whom it is being made; (3) state with particularity the amount offered to settle a claim for punitive damages, if any; and (4) state its total amount. Fla. Stat. § 768.79(2)(a)–(d).

A proposal for settlement must also comply with Rule 1.442 of the Florida Rules of Civil Procedure, which sets forth the procedural requirements for making a proposal for settlement. The

Eleventh Circuit has held that both section 768.79 and Rule 1.442 apply in diversity cases in which the substantive law of Florida applies. *McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001), *modified in part by* 311 F.3d 1077 (11th Cir. 2002). However, the Eleventh Circuit has cautioned that "'the language of the statute and rule must be strictly construed because the offer of judgment statute and rule are in derogation of the common law rule that each party pay its own fees.'" *Primo v. State Farm Mut. Auto. Ins. Co.*, 661 F. App'x 661, 663 (11th Cir. 2016) (per curiam)[7] (quoting *Campbell v. Goldman*, 959 So. 2d 223, 226 (Fla. 2007)).

Accordingly, as the prevailing party in this action, Defendant is entitled to reasonable attorneys' fees if its settlement proposal satisfied the requirements of section 768.79 and Rule 1.442. Plaintiff contends that Defendant should not be awarded attorneys' fees because (1) the offer was ambiguous, therefore failing to comply with Rule 1.442, and (2) the offer was not made in good faith. I will address each argument in turn.

        1. Ambiguity.

Rule 1.442(c) requires that a proposal for settlement "state with particularity any relevant conditions" so that the proposal is clear enough to allow an offeree to make a knowledgeable decision. *Hernandez v. Target Corp.*, No. 14-21062-CIV, 2016 WL 4006656, at *4 (S.D. Fla. Mar. 30, 2016). This means that "the settlement proposal [must] be sufficiently clear and definite to allow the offeree to make an informed decision without needing clarification." *State Farm Mut. Auto. Ins. Co. v. Nichols*, 932 So. 2d 1067, 1079 (Fla. 2006). "If ambiguity within the proposal could reasonably affect the offeree's decision, the proposal will not satisfy the particularity requirement." *Id.* The Florida Supreme Court has held that a general release qualifies as a condition or nonmonetary term that must be described with particularity. *Id.* at 1078.

---

[7] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority.

In the proposal for settlement, Defendant proposed to pay Plaintiff $22,500.00 "in full and final settlement and resolution of all of Hill's claims that have been, or could have been, asserted against Allianz in the above-captioned litigation." Doc. No. 145-1, at 1. The proposal stated that no part of that amount was attributable to punitive damages and each party would bear its own attorney's fees and costs. *Id.* at 2. Attached to the settlement offer was a general release. *Id.* at 7-8. The proposal stated that the two non-monetary conditions of the proposal were execution of the general release and dismissal of the action with prejudice. *Id.* at 2.

Plaintiff contends that the proposal for settlement does not comply with Rule 1.442(c) because it is ambiguous and could potentially require him to release claims against a non-party to this action. The settlement proposal states in relevant part:

> Allianz proposes to pay Hill the total amount of Twenty-Two Thousand and Five Hundred Dollars ($22,500.00) in full and final settlement and resolution of all of Hill's claims that have been, or could have been, asserted *against Allianz* in the above-captioned litigation. This Proposal shall be construed as including all damages that may be awarded in a final judgment and, if accepted, *shall resolve all claims that were brought or could have been brought by Hill in the above-captioned litigation*, including any claims for punitive damages, attorney's fees, costs, and interest.

Doc. 145-1, at 1-2 (emphasis added). Plaintiff believes this language conflicts with the language of the general release. The release states in pertinent part as follows:

> REX D. HILL, as *Plaintiff and Releasor*, for and in consideration of the sum of TWENTY TWO THOUSAND AND FIVE HUNDRED DOLLARS ($22,500.00), or other valuation considerations, received from, or on behalf of, ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, *Defendant and Releasee*, the receipt of which is hereby acknowledged,
>
> HEREBY remises, releases, acquits, satisfies, and forever discharges the Releasee of and from all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, cost (including attorneys fees, expert fees, and out-of-pocket expenses), pre- and post-judgment interest, obligations, losses, loss of services, expenses,

> compensation, judgments, executions, claims and demands whatsoever, in law or in equity, which said Releasor ever had, now has, or which any personal representative, successor, heir or assign of said Releasor, hereafter can, shall or may have, against said Releasee, for, upon or by reason of any matter, cause or thing whatsoever, known and unknown, foreseen and unforeseen, from the beginning of the world to the day this General Release is signed, and including all issues, cause, claims, counterclaims, set-offs, and allegations which were raised or could have been raised relating to or arising out of certain action styled REX D. HILL v. ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, Case No. 6:14-cv-950-Orl-41-CEM-KRS, pending in the United States District Court for the Middle District of Florida.

Doc. 145-1, at 7 (emphasis added). Plaintiff contends that the ambiguity arises not from these paragraphs, but from a footnote that states:

> Wherever used, the term "Releasor" and "Releasee" shall include those parties specifically named in this General Release and *all other entities and persons, natural or corporate*. The term "Releasor" and "Releasee" shall also include singular and plural, heirs, legal representatives, assigns of individuals, employees, agents, servants, officers and directors, stockholders, attorneys, representatives, employers, successor subsidiaries, affiliates, partners, predecessors or successors in interest, assigns of corporations, whenever the context so admits or requires.

*Id.* at 7 n. 1 (emphasis added).

Plaintiff argues that the phrase "all other entities and persons, natural or corporate and agents" renders the scope of entities covered in the general release broader than those covered in the settlement proposal, which states that it applies to only Plaintiff and Defendant. Plaintiff contends that this ambiguity could potentially extinguish claims he may have against non-parties to this action, such as Vector One, which he asserts could yet be liable to him as a repeater of the defamation originating from Defendant. Plaintiff's argument is not well taken.

In determining whether the proposal for settlement fails to comport with Rule 1.442(c)(2)(A) or whether it is ambiguous, the decision in *Board of Trustees of Florida Atlantic University v. Bowman*, 853 So. 2d 507 (Fla. 4th Dist. Ct. App. 2003), is instructive. In *Bowman*, the defendant

- 9 -

filed a proposal for settlement, requiring each plaintiff to execute a general release that defined the "First Party" (plaintiffs) and "Second Party" (defendant) as follows:

> [S]ingular and plural, heirs, legal representatives, agents, employees, attorneys, and assigns of individuals and the subsidiaries, affiliates, parent corporations, and each of their respective present and former officers, agents, employees including, but not limited to, shareholders, directors, attorneys, insurers, sureties, successors and assigns of corporations, agencies, or political bodies, wherever the context so admits or requires.

*Id.* at 508. Plaintiffs did not respond to the proposal within the requisite time. After prevailing in the case, the defendant moved for attorney's fees and costs under section 768.79. The trial court denied the motion, concluding that the settlement proposal was invalid because the general release required the involvement of third parties. The Fourth District Court of Appeals found that the inclusion of "agents, employees, etc. is simply standard language in a general release that should be considered unambiguous and should not invalidate the proposal." *Id.* at 510 (citation omitted); *see also Carey-All Transp., Inc. v. Newby*, 989 So. 2d 1201, 1204-05 (Fla. 2d Dist. Ct. App. 2008) (holding that language in a general release, which was attached to a proposal for settlement, defining "Releasee" as named defendant and "its predecessors, successors . . . agents, servants and employees, and former employees," was not too broad and ambiguous, and the language of the general release was "typical of the language contained in many general releases").

In *Nichols*, the Florida Supreme Court cited *Bowman* with approval in cautioning that "[R]ule 1.442 is not intended to revolutionize the language used in general releases." 932 So. 2d at 1079. The Court noted that, "[t]raditionally, general releases have included expansive language designed to protect the offeror from unforeseen developments or creative maneuvering by the other party. Such language can be sufficiently particular to satisfy rule 1.442." *Id.* The Court emphasized that Rule 1.442 "aims to prevent ambiguity, not breadth." *Id.* "The rule does not demand the impossible. It merely requires that the settlement proposal be sufficiently clear and

definite to allow the offeree to make an informed decision without needing clarification." *Id.* "Therefore, parties should not 'nit-pick' the validity of a proposal for settlement based on allegations of ambiguity unless the asserted ambiguity could 'reasonably affect the offeree's decision' on whether to accept the proposal for settlement." *Carey–All Transp.*, 989 So. 2d at 1206 (quoting *Nichols*, 932 So. 2d at 1079).

Applying those principles here, a fair reading of the footnote in question creates no ambiguity between the settlement proposal and the general release. "While general releases can be broad when read in isolation, the question is whether a fair reading of the offer as a whole is ambiguous." *Johnson v. Thor Motor Coach, Inc.*, No. 5:15-cv-85-Oc-PRL, 2016 WL 6893942, at *3 (M.D. Fla. Nov. 23, 2016) (citing *U.S. Specialty Ins. Co. v. Burd*, 6:09-cv-231-Orl-31KRS, 2012 WL 3242997, at *2 (M.D. Fla. Aug. 8. 2012)). Read in isolation, the part of the footnote stating, "the term 'Releasor' and 'Releasee' shall include those parties specifically named in this General Release *and all other entities and persons*, natural or corporate" appears expansive and not limited to just Plaintiff and Defendant. In context, however, the General Release defines Releasee in the first paragraph as Allianz, with the appended footnote stating that Allianz, the Releasee, includes all other entities and persons followed by a list of the type of such other entities and persons. This language is "typical of the language contained in many general releases" that extends the terms of the release to corporate subsidiaries, alter-egos, affiliates, etc. *Carey-All*, 989 So. 2d at 1204-05; *see also Bowman*, 853 So. 2d at 510. Additionally, Plaintiff has failed to show any evidence that Vector One has any affiliation or corporate relationship with Defendant sufficient to include Vector One within the definition of "Releasee."

Furthermore, Plaintiff could not have reasonably believed that the terms of the general release require him to release any claims against Vector One because he had not asserted any such

claims in this action or any other. "In cases where proposals are found to be fatally ambiguous, there were actually outstanding or pending claims which could have been extinguished, not just the mere suggestion that one may exist in the future." *Burd*, 2012 WL 3242996, at *3 (collecting cases). Plaintiff's argument that the proposed settlement was ambiguous because it may have required him to release entirely hypothetical claims against Vector One therefore must be rejected.

As this Court has noted, "[a]llowing plaintiffs to avoid the statutory fee-shifting provision by scrutinizing settlement offers for minor problems after the fact would defeat the purpose of § 768.79 by eliminating the intended incentive for defendants to make reasonable settlement offers." *Arnoul v. Busch Enter. Corp.*, No. 8:07-cv-1490-T-24MAP, 2008 WL 5341148, at *3 (M.D. Fla. Dec. 19, 2008) (citing *Carey-All Transp.*, 989 So. 2d at 1206). I, therefore, respectfully recommend that the Court find that the proposal for settlement was sufficiently clear and was a valid offer that satisfied the requirements of section 768.79 and Rule 1.442.

2. Good Faith.

If an offer satisfies the requirements of section 768.79 and Rule 1.442, "'[t]he sole basis on which a court can disallow an entitlement to an award of fees is if it determines that [the] offer was not made in good faith.'" *McMahan*, 311 F.3d at 1083 (11th Cir. 2002) (quoting *Levine v. Harris*, 791 So. 2d 1175, 1177 (Fla. 4th Dist. Ct. App. 2001)); *see also* Fla. Stat. § 768.79(7)(a) ("If a party is entitled to costs and fees pursuant to the provisions of this section, the court may, in its discretion, determine that an offer was not made in good faith. In such case, the court may disallow an award of costs and attorney's fees."). "The offeree bears the burden of proving the offeror's proposal was not made in good faith." *Liggett Grp., Inc. v. Davis*, 975 So. 2d 1281, 1285 (Fla. 4th Dist. Ct. App. 2008) (citation omitted). In determining whether the offer was made in good faith, the court must determine "whether the offeror had a reasonable foundation upon which to make the offer." *Id.*

(citation omitted); *see also Gurney v. State Farm Mut. Auto.*, 889 So. 2d 97, 99 (Fla. 5th Dist. Ct. App. 2004) (holding that the "good faith inquiry requires a trial court to review the facts and circumstances known to the offeror at the time it made the offer").

Plaintiff asserts that Defendant's proposal for settlement was not made in good faith because (1) there were significant facts that contradicted Defendant's defense against his defamation claim, and (2) Defendant had no idea prior to the delivery of the settlement proposal what damages he was claiming. Plaintiff thus contends that Defendant's statement in its motion for attorney's fees that the proposal represented the full amount of damages that Plaintiff claimed he incurred "was woefully inaccurate." Doc. 148 at 14.

Plaintiff's arguments are insufficient to show bad faith. First, an offeree is not required to "possess, at the time he makes the offer, the kind of quantum of evidence needed to support a judgment." *Arnoul*, 2008 WL 5341148, at *2 (quoting *Donohoe v. Starmed Staffing, Inc.*, 743 So. 2d 623, 625 (Fla. 2d Dist. Ct. App. 1999)). Similarly, a lack of discovery does not establish bad faith, *Tiara Condo. Ass'n, Inc. v. Marsh USA, Inc.*, 697 F. Supp. 2d 1349, 1353 (S.D. Fla. 2010). Nevertheless, by the time Defendant made its settlement proposal, the parties had exchanged written discovery. *See* Solares Dec., Doc. No. 145-2 ¶ 5. Defendant contends that based upon this written discovery and its analysis of the case, it believed that it had a strong chance of prevailing on the defamation claim and that Plaintiff's tortious interference claim lacked any merit. *Id.*

Defendant further contends that the $22,500.00 offer was based on Plaintiff's own damages calculations disclosed in discovery. *Id.* at ¶ 6. "The monetary amount of the offer is not dispositive" to a finding of good faith. *Johnson*, 2016 WL 6893942, at *4 (citation omitted); *see also Weesner v. United Servs. Auto. Ass'n.*, 711 So. 2d 1192, 1193 (Fla. 5th Dist. Ct. App. 1998) (finding that a $100 settlement offer was made in good faith where defendant believed itself free

- 13 -

from liability); *State Farm Mut. Auto. Ins. Co. v. Marko*, 695 So. 2d 874, 876 (Fla. 2d Dist. Ct. App. 1997) (finding a one dollar settlement offer to be in good faith for the same reason). "Offers are not suspect merely because they are nominal." *State Farm Mut. Auto. Ins. Co. v. Sharkey*, 928 So. 2d 1263, 1264 (Fla. 4th Dist. Ct. App. 2006). Rather:

> Offers, nominal or otherwise, must bear a reasonable relationship to the amount of damages or a realistic assessment of liability. The rule is that a minimal offer can be made in good faith if the evidence demonstrates that, at the time it was made, the offeror had a reasonable basis to conclude that its exposure was nominal. The offer need not equate with the total amount of damages that might be at issue.

*Id.* (internal citations and quotation marks omitted). Defendant has stated the basis on which it made its offer, and Plaintiff has offered no evidence to show that Defendant's settlement proposal did not bear a reasonable relationship to the amount of Plaintiff's damages and a realistic assessment of liability.

Because Plaintiff has not met his burden of showing that Defendant did not make its settlement proposal in good faith, I respectfully recommend that the Court find that Defendant is entitled to recover its reasonable attorney's fees in this action pursuant to section 768.79.

    *B. Costs.*

Defendant also seeks an award of the reasonable costs it incurred after service of the settlement proposal to Plaintiff. Federal Rule of Civil Procedure 54(d) provides that "costs—other than attorney's fees—should be allowed to the prevailing party." The Eleventh Circuit has held that costs awarded under section 768.79 in federal courts are limited to those costs permitted under federal law. *Primo*, 661 F. App'x at 667. Therefore, Defendant may be awarded those costs that are permitted under 28 U.S.C. § 1920.

Defendant filed a Proposed Bill of Costs in the amount of $7,003.75 on March 4, 2016. Doc. No. 120. The Clerk of Court taxed those costs on March 18, 2016. Doc. No. 124. Because

the costs sought in this motion are the same as those costs listed in the Proposed Bill of Costs that already have been taxed by the clerk and Plaintiff filed no objection thereto, I respectfully recommend that the motion be denied as moot with respect to the request for an award of costs.

**IV. RECOMMENDATIONS.**

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the Court **GRANT in part** Defendant's Second Renewed Motion for Attorneys' Fees and Costs (Doc. No. 145), and **FIND** that Defendant is entitled to the reasonable attorneys' fees it incurred after service of the Proposal for Settlement on April 20, 2015.  After issuance of the Court's order, the undersigned will address the reasonable attorneys' fees incurred if the Court finds entitlement to a fee award.

Because Defendant's costs have already been taxed by the Clerk of Court, I further **RESPECTFULLY RECOMMEND** that the Court **DENY as moot** the motion to the extent that it seeks to recover costs already awarded.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on April 12, 2018.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy